THE CHICAGO, KANSAS & WESTERN RAILROAD COM-
PANY v. THE BOARD OF COMMISSIONERS OF CHASE
COUNTY *et al.*

COUNTY BONDS *to Aid Railroad Company* — *Insufficient Petition* — *Void
Election.* Where an election is ordered in a county under the pro-
visions of chapter 107 of the Laws of 1876 and the amendments
thereto, including chapter 142 of the Laws of 1877, for the purpose
of authorizing the county to subscribe to the capital stock of a rail-
road company and to issue the bonds of the county in payment for
such stock, and such election is ordered upon a petition presented to
the county board which does not contain the names and is not the
petition of two-fifths of the resident tax-payers of the county, but
the county board declares it to be sufficient, and the election is held,
the returns canvassed and the result declared in favor of subscribing
for the stock and issuing the bonds, and the county clerk is ordered
by the county board to make the subscription, and he does so, *held,*
that upon these facts the election must be deemed to be void, because
of a want of a sufficient petition.

### *Original Proceeding in Mandamus.*

THIS is an action of *mandamus*, commenced originally in
this court by the Chicago, Kansas & Western Railroad Com-
pany against the board of county commissioners and the
county clerk of Chase county, to compel the defendant to is-
sue to the plaintiff certain county bonds. The right of the
railroad company to these bonds, as alleged in the alternative
writ, is founded upon a certain election, hereafter described.
It is alleged in the alternative writ, among other things, that
on October 12, 1886, a petition of more than two-fifths of
the resident tax-payers of Chase county was presented to the
board of county commissioners, praying that an election be
ordered to authorize the county to subscribe to the capital
stock of the railroad company in the sum of $80,000, and to
issue to the railroad company an equal amount of the bonds
of the county in payment for such stock; that the election
was ordered to be held on November 16, 1886; that it was
so held; that the returns thereof were duly canvassed on No-
vember 19, 1886; that the result thereof was declared to be

in favor of making the subscription and of issuing the bonds; that the county clerk then, by order of the county board, made the subscription; that the railroad company complied with all the terms and conditions of the proposition submitted to the electors at such election, and in accordance with such terms and conditions completed its railroad before June 1, 1887; and it is also alleged that the railroad company is now entitled to such bonds. The defendants filed a return and an amended return to the alternative writ, which amended return, omitting title and signature, reads as follows:

"The defendants, William Harris, C. S. Ford, and W. H. Holsinger, as the board of county commissioners of the county of Chase, state of Kansas, and J. S. Stanley, county clerk of said county, for amended answer to the alternative writ of *mandamus* issued herein and returned herewith, say:

"1. These defendants deny every allegation contained in said writ that is not hereinafter expressly admitted to be true.

"2. These defendants admit that the plaintiff, the Chicago, Kansas & Western Railroad Company, is a railroad corporation created and organized under the laws of the state of Kansas, for the purpose of constructing, among other things, a line of railroad through the county of Chase, in the state of Kansas, and which these defendants aver is the line of railroad hereinafter mentioned.

"3. These defendants further state, that on the 12th day of October, 1886, there was presented to the board of county commissioners of Chase county a petition, requesting said board to submit to the qualified electors of said county a proposition to vote aid to the plaintiff, a copy of which petition, omitting the names pretended to be signed thereto, is hereto attached, marked 'Exhibit A,' and is referred to and made a part of this amended answer; but these defendants aver and charge the fact to be that said petition was not signed by at least two-fifths of the resident tax-payers of Chase county; that the said petition was not the petition of at least two-fifths of the resident tax-payers of said Chase county, nor did two-fifths of the resident tax-payers of said county give authority for their signatures to be signed thereto; that at the time of the presentation of said petition there were then at least two thousand resident tax-payers in said county of Chase, and that said petition did not contain the names of more than four

hundred resident tax-payers of said county; and these defendants further aver, and charge the same to be true, that by reason of said petition not being the petition of nor containing the names of two-fifths of the resident tax-payers of said county, the said petition was illegal and void, and it conferred and gave to the said board of county commissioners of Chase county no jurisdiction, authority, power or right to call the special election hereinafter alleged, and that said special election so held, and all acts of said board based thereon, were and are, by reason thereof, illegal and void.

"4. That the said board of county commissioners of Chase county, on the date aforesaid, by its determination and finding, declared that it did contain and was the petition of two-fifths of the resident tax-payers of said county, and did thereupon order a special election to be held at the various voting-places in said county of Chase, on November 16, 1886, at which said election said proposition was to be submitted for adoption or rejection.

"5. That notice was given of said election, and on the day last aforesaid the said election was held in the various voting precincts of said Chase county.

"6. That afterward, on the 19th day of November, 1886, the said board of county commissioners of Chase county canvassed the returns of said election, and declared that the said proposition had been carried by a majority of 155 votes, and directed the county clerk of said county to make subscription in the name of the county of Chase, in the sum of eighty thousand dollars ($80,000), to the capital stock of the plaintiff, according to and upon the terms embraced in said proposition.

"7. That immediately afterward, and without interval, on the date last aforesaid, the county clerk, on the request and suggestion of the plaintiff, made such subscription.

"8. These defendants further state, that after the subscription of said stock, and continuously thereafter, until and long after the 4th day of July, 1887, neither the plaintiff nor any of its representatives, officers or agents ever appeared before said board of county commissioners, or otherwise gave the said board or anyone else in authority for said board any notice or information that it had accepted said subscription, and would build, or proceed to build, or was proceeding to build, said road on the faith of said subscription; and these defendants further aver, that at no time prior to or on said date did the plaintiff accept said proposition, or authorize any of its officers so to do.

"9. These defendants further state, that the plaintiff ought not to have or further maintain this action, for the reason that no demand has at any time ever been made of or on the defendants, the board of county commissioners, the said county of Chase, for said bonds or any of them, by the plaintiff or anyone for it or in its behalf.

"10. These defendants further state, that the plaintiff ought not to have or further maintain this action, for the further reason that no delivery of the said shares of the capital stock of the plaintiff was ever made to the treasurer of said county, nor to anyone else on behalf of and for the said county of Chase, and no tender of said shares of stock was ever made to said treasurer or any of these defendants, as was required by the terms of said proposition, before it was entitled to have or receive said bonds, or sue for the same.

"11. These defendants further state, that the plaintiff did not accept said subscription of stock, that it did not build its railroad on the faith of such subscription, and that it did not comply with and perform the terms and conditions to be performed by it in said proposition; that it did not build, complete and have in operation its line of railroad from connection with the Ellinor extension of that company, to the north line of Chase county, on or before the 1st day of June, 1887; that it did not build its said railroad of standard gauge, completing the same and have the same in operation by lease or otherwise from a connection with the Ellinor extension of the said Chicago, Kansas & Western Railroad Company, at any favorable or other point in the valley of the south fork of the Cottonwood river, in the county of Chase, in the state of Kansas, to the north line of Chase county, *via* Diamond creek valley, in Chase county, by the 1st day of June, 1887, nor by or at any other time; and that it had wholly failed and neglected to build, complete or operate any portion of its grade, bridges, road-bed or telegraph line, or procure any right-of-way therefor for about three miles of its route from about Strong City, to Evans, by the 1st day of June, 1887, and for many months thereafter; and that it did not establish and maintain a division terminus with division facilities as was or might be necessary for the operation of its railroad between the city of Strong City and Cottonwood Falls, Chase county, Kansas, by the 1st day of June, 1887, as it was required to do by the terms of said proposition; and that it was not delayed or hindered in the construction of the said line of railroad by labor

strikes, legal proceedings, or extraordinary action of the elements.

"These defendants further say, that by reason of the facts hereinbefore alleged, they should be dismissed with their reasonable costs."

The plaintiff moved to quash the third paragraph of the amended return, which motion reads as follows:

"Comes now the plaintiff, and moves the court to quash the third paragraph contained in the amended answer and return of the defendants, on the ground and for the reason that said paragraph does not by itself, or in connection with any other matter alleged in said amended answer, state facts sufficient to constitute any defense to the alternative writ."

Further facts are stated in the opinion, filed at the session of the court in May, 1890.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.

*J. G. Waters, F. P. Cochran,* and *Madden Bros.,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: We have already decided several questions involved in or connected with the controversy now set forth in this present action. On two occasions we delivered written opinions. (*C. K. & W. Rld. Co. v. Evans,* 41 Kas. 94; *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 42 id. 223.) On the other occasions we delivered only oral opinions, which have not been and will not be published. We now deliver another written opinion, although the decision of the question now presented cannot determine the case, nor be of much impartance in the case. The question arises upon a motion by the plaintiff to quash the third paragraph of the defendant's answer to the alternative writ; and the question presented is, substantially, whether an election is valid where it was held in and by a county under the provisions of chapter 107 of the Laws of 1876, and the amendments thereto, including chapter 142 of the Laws of 1877, where the petition presented to the county

board asking such board to order the election was not the petition of two-fifths of the resident tax-payers of the county. The said third paragraph alleges that the aforesaid petition was not signed by and was not the petition of two-fifths of the resident tax-payers of the county as required by the statutes above cited, and the plaintiff moves to quash said third paragraph, upon the ground that it does not state facts sufficient to constitute any defense to the plaintiff's action, and virtually upon the ground that it makes no difference whether the petition was a petition of two-fifths of the resident tax-payers of the county, or not. The decision of this question is unimportant under the claims of the parties, respectively, for the following reasons: The plaintiff claims that the petition was a petition of at least two-fifths of the resident tax-payers of the county, and that such fact can be established by the evidence; while the defendants claim that even if such fact were established, still that the railroad company would not be entitled to the bonds which it demands, for the reason that the railroad company did not comply with the terms and conditions of the proposition submitted by the county board to the electors of the county at such election. Notwithstanding the fact that the question is unimportant, we shall nevertheless deliver our decision in writing.

The plaintiff, the railroad company, desires to compel the defendants, the board of county commissioners and the county clerk of Chase county, to issue to the plaintiff the bonds of the county in the amount of $80,000, and it founds its right of action upon a certain election held in Chase county on November 16, 1886, under the provisions of chapter 107 of the Laws of 1876 and the amendments thereto, including chapter 142 of the Laws of 1877, and upon the subsequent acts of the parties in pursuance of such election; and the plaintiff, in the alternative writ, has set forth a *prima facie* cause of action. The defendants, however, in the third paragraph of their answer to this writ, allege that the election was void for the reason that the petition presented to the county board for the election was not a petition of two-fifths of the resident

tax-payers of the county as is required by the statutes above cited. The plaintiff moves to quash this third paragraph upon the ground that it does not set forth facts sufficient to constitute any defense to the plaintiff's action. Upon the pleadings and the motion to quash it must be taken as an admitted fact that two-fifths of the resident tax-payers of Chase county did not petition for the aforesaid election. This certainly renders the election void, and also renders void everything founded upon the election, unless something has since transpired that would cure this defect in the petition or estop the defendants from urging the invalidity of the petition and of the election. Of course if anything of such a character has since transpired, it devolves upon the party that is benefited thereby to show it. In other words, if anything has transpired that would cure the defective petition or render the election valid, or estop the county of Chase or the officers thereof from claiming that the election is void, it devolves upon the plaintiff in this action to show such thing. The plaintiff, however, for this purpose may use all the admissions made by the defendants in their answer to the alternative writ. The admissions of the defendants, beneficial to the plaintiff and contained in their answer, seem to be substantially as follows: They admit that the railroad company is and was a duly-organized railroad corporation, with power to build its railroad as contemplated by the terms and conditions of the proposition submitted to the electors of Chase county. It admits that a petition was presented to the board of county commissioners for the election, defective only in not containing the names, and in not being the petition of two-fifths of the resident tax-payers of the county. It admits that the county board examined the petition, and declared it to be sufficient and to be the petition of two-fifths of the resident tax-payers of Chase county; that upon such petition the election was ordered, was held, the returns thereof canvassed, the result declared in favor of the subscription for the stock and in favor of the issuing of the bonds, and that the county board ordered such

County bonds to aid railroad company—insufficient petition—void election.

subscription, and that the county clerk made the subscription; but this, we think, is as far as the admissions extend. How many votes were cast at the election, we cannot know. Whether two-fifths of the legal voters of Chase county voted for the bonds, or not, we cannot know; but even if two-fifths of the legal voters of Chase county did so vote, it is not shown that they or any portion of them were resident tax-payers of the county. From anything appearing in the case, those of the resident tax-payers who voted may have all voted against the bonds, and only such persons as were not tax-payers may have voted for them. Besides, many of the resident tax-payers of Chase county may not have voted at all. Indeed, many of them may not have had any right to vote, for many of them may have been women, or minors, or other persons, who had no right to vote at such election. Evidently the legislature intended that no bonds should be issued to a railroad company in payment for the stock of the company, unless at least two-fifths of the resident tax-payers of the county should first express a willingness that the same might be done; and this expression of willingness should be given before the calling of the election and as a foundation for the election. Whether the consent of two-fifths of the resident tax-payers of the county that the bonds might be issued can be shown in any other manner than that they petitioned for the election for that purpose, as that they voted for the bonds at the election, or that they acquiesced in the vote afterward, or that by some act or want of action they ratified the election or the subscription, or estopped themselves from claiming that the election or the subscription was invalid, need not be decided in this case, for nothing has been shown in this case that would tend to show that two-fifths of the resident tax-payers of the county have ever in any manner consented that the bonds should be issued. And nothing has been shown in this case that would constitute a ratification on the part of, or an estoppel against, the county as a *quasi* corporation, or otherwise, or its officers or the inhabitants of the county. All the allegations of the alternative writ are denied, except such as are expressly ad-

mitted by the answer, and the answer among other things alleges that the railroad company never accepted the terms and conditions upon which the bonds were voted to be issued; that it never complied with such terms and conditions; that it did not build its railroad upon the faith of that election or of the subscription; that it did not build its railroad on or before June 1, 1887, as it was required to do by the terms and conditions of the proposition voted upon at that election, and indeed it is alleged that the railroad company never built the railroad that was contemplated by the election and subscription at all.

The motion to quash the third paragraph of the defendants' answer and return will be overruled.

All the Justices concurring.